## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

Linda Merritt

               Debtor(s).

---

Linda Merritt,

               Appellant,

v.

PNC Bank, National Association,

               Appellee.

Appeal No. 15-cv-04282-GJP

On appeal from the Bankruptcy Court for the Eastern District of Pennsylvania

Bankr. Case No. 11-18134-JKF

 

## <u>OPENING BRIEF OF APPELLEE PNC BANK NATIONAL ASSOCIATION</u>

Filing Date: October 29, 2015

NICOLE B. LABLETTA, ESQ.
UDREN LAW OFFICES, P.C.
111 Woodcrest Rd, Ste 200
Cherry Hill, NJ 08003
856-669-5400
856-669-5399
<u>nlabletta@udren.com</u>

*Counsel for Appellee PNC Bank, National Association*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. Bankr. P. 8015(b) and Rule 7.1, PNC, by and through its undersigned counsel, hereby certifies as follows:

PNC Bank, National Association is a national bank and indirect subsidiary of The PNC Financial Services Group, Inc., which is a publicly-traded entity on the New York Stock Exchange. No one person owns more than 5% of the stock of The PNC Financial Services Group, Inc.

National City Mortgage was a direct or indirect subsidiary or division of National City Bank. On or about November 7, 2009, National City Bank merged with and into PNC Bank, National Association, and no longer exists as a separate entity.

# Table of Contents

I.   JURISDICTIONAL STATEMENT ................................................................... 1

II.  STATEMENT OF ISSUES PRESENTED ........................................................ 1

III. STATEMENT OF THE CASE ........................................................................ 3

    A.   History of the Loan and the State Court Foreclosure Action ................................. 3

    B.   The Bankruptcy Case, the Proof of Claim, and the Adversary Proceeding ........... 4

    C.   The Claim Objection ........................................................................ 6

IV.  SUMMARY OF ARGUMENT ...................................................................... 7

V.   ARGUMENT ................................................................................................ 8

    A.   The Bankruptcy Court Did Not Err In Overruling the Debtor's Claim Objection . 8

        1.   Loan Servicers Have Standing to Prosecute Proofs of Claim ..................... 8

        2.   The Debtor has Already Litigated the Issue of PNC's Standing in the State Court Foreclosure Proceeding .................................................................. 12

        3.   The Bankruptcy Court Correctly Concluded that PNC Had Not Perpetrated a Fraud on the Court by Redacting the Loan Identifier ........ 17

        4.   Debtor's Other Arguments Were Not Raised Below ................................ 18

    B.   The Bankruptcy Court's Denial of Reconsideration Was Not an Abuse of Discretion ........................................................................................ 19

VI.  CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abboud v. Abboud (In re Abboud),*
    237 B.R. 777 (B.A.P. 10th Cir. 1999)..............................................................16, 17

*Barnes Foundation v. Township of Lower Merion,*
    242 F.3d 151 (3d Cir. 2001)...................................................................................19

*D.C. Court of Appeals v. Feldman,*
    460 U.S. 462 (1983)...............................................................................................15

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005)...............................................................................................15

*Forever Green Ath. Fields, Inc. v. Dawson,*
    514 B.R. 768 (E.D. Pa. 2014) .............................................................................2, 18

*Greer v. O'Dell,*
    305 F.3d 1297 (11th Cir. 2002) ...............................................................................8

*Herring v. United States,*
    424 F.3d 384 (3d Cir. 2005)...................................................................................17

*In re Alcide,*
    450 B.R. 526 (Bankr. E.D. Pa. 2011) ..............................................................8, 10, 11

*In re Brooks,*
    2008 Bankr. LEXIS 621 (Bankr. E.D. Pa. Feb. 13, 2008)......................................14

*In re Conde-Dedonato,*
    391 B.R. 247 (Bankr. E.D.N.Y. 2008).....................................................................9

*In re Daley,*
    2015 WL 196509 (Bankr. S.D.N.Y. Jan 14, 2015)..................................................9

*In re Gimelson,*
    2004 U.S. Dist. LEXIS 23879 (E.D. Pa. Nov. 23, 2004)........................................1

*In re Gulley,*
    436 B.R. 878, 2010 WL 3342193 (Bankr. N.D.Tex. 2010)......................................9

*In re Knapper,*
    407 F.3d 573 (3d Cir. 2005)...................................................................................15

*In re Madera*,
    586 F.3d 228 (3d Cir. 2009)..........................................................................15, 16

*In re McKinney*,
    507 B.R. 534 (Bankr. W.D. Pa. 2014) ...................................................................17

*In re Minbatiwalla*,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) .....................................................................9

*In re Viencek*,
    273 B.R. 354 (N.D.N.Y. 2002) ................................................................................9

*Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*,
    440 B.R. 624 (Bankr. D.N.J. 2010) .........................................................................8

*Manu v. Nat'l City Bank of Indiana*,
    471 Fed. Appx. 101 (3d Cir. 2012)........................................................................16

*Marta Group, Inc. v. County Appliance Co., Inc..*,
    79 B.R. 200 (E.D. Pa. 1987) ............................................................................2, 19

*Mellon Bank, N.A. v. Metro Communications, Inc.*,
    945 F.2d 635 (3d Cir. 1991)....................................................................................2

*Pellulo v. Edwards & Angell*,
    1999 U.S. Dist. LEXIS 16711 .........................................................................2, 19

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923).............................................................................................15

OTHER CASES

*Balent v. City of Wilkes-Barre*,
    699 A.2d 309 (Pa. 1995)......................................................................................12

*Fox v. Gabler*,
    534 Pa. 185 (1993)...............................................................................................12

*In PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell*,
    100 A.3d 611, 621 (Pa. Super. 2014).....................................................................13

*J.P. Morgan Chase Bank, N.A. v. Murray*,
    63 A.3d 1258 (Pa. Super. 2013).............................................................................14

*Stuart v. Decision One Mortgage Co., LLC*,
    2009 Pa. Super. 103, 975 A.2d 1151 (2009)..........................................................12

*Twp. Of Ohio v. Builders Enters., Inc.*
    276 A.2d 556 (Pa. Commw. Ct. 1971) ..................................................................12

*Wilkes v. Phoenix Home Life Mut. Ins. Co.*,
   902 A.2d 366 (Pa. 2006) ......................................................12

**FEDERAL STATUTES**

28 U.S.C. § 158(a)(1) .............................................................1

**OTHER STATUTES**

§ 3203 of the Pennsylvania Uniform Commercial Code .......................13

§ 3301 of the Pennsylvania Uniform Commercial Code .....................13, 14

**RULES**

Fed. R. Bankr. 3001 ...........................................................10, 11

Fed. R. Bankr. P. 3008 ...........................................................2

Fed. R. Bankr. P. 9023 .........................................................8, 19

Fed. R. Bankr. P. 9037 ....................................................... passim

Fed. R. Civ. P. 5.2 ..............................................................17

Pa. R.C.P. 1019(g) ...............................................................3

Pa. R.C.P. 1141 .................................................................3

PNC Bank, National Association ("PNC" or "Appellee") submits this Opening Brief pursuant to Rules 8014 and 8015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## I.  JURISDICTIONAL STATEMENT

The Jurisdictional Statement contained in the "Opening Brief" of Appellant Linda Merritt ("Appellant" or "Debtor") incorrectly asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 156(a).  While PNC does not dispute the conclusion that this Court has jurisdiction over this appeal, that jurisdiction arises pursuant to 28 U.S.C. § 158(a)(1).

## II.  STATEMENT OF ISSUES PRESENTED

PNC is dissatisfied with the Statement of Issues Presented contained in Appellant's Opening Brief and submits that the following is a correct statement of the issues presented in this appeal:

Issue No. 1:    Whether the Bankruptcy Court[1] correctly concluded that the Debtor's concession that PNC was the servicer of the Debtor's Mortgage Loan, which concession was made both in the Debtor's written submissions and on the record during oral argument, was dispositive of the Claim Objection because virtually every court which has addressed the issue has concluded that servicers of mortgage loans have standing to file proofs of claim in bankruptcy cases.

Standard of Review:  In reviewing a bankruptcy court's order denying a claim objection, "the district court must accept the bankruptcy court's finding of historical or narrative facts unless clearly erroneous, but exercises plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *In*

_____

[1]    Capitalized terms in the statement of issues have the meanings hereafter ascribed to them in this brief.

*re Gimelson*, 2004 U.S. Dist. LEXIS 23879, *40 (E.D. Pa. Nov. 23, 2004) (citing *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal quotation marks omitted, alteration in original)).

Issue No. 2:    Whether the Bankruptcy Court properly denied the Debtor's motion for reconsideration where the Debtor conceded that PNC was the servicer of the Mortgage Loan, where PNC affirmatively disclosed in its response to the Claim Objection that Freddie Mac was the investor in the Mortgage Loan, where PNC provided unredacted copies of the Note and Mortgage containing the Freddie Mac loan identifier to the Bankruptcy Court in connection with the Claim Objection and other filings, and where the Bankruptcy Court concluded that no fraud was perpetrated on it in connection with the redaction of the Freddie Mac loan identifier by PNC's counsel, which redaction was undertaken in order to comply with Bankruptcy Rule 9037.

Standard of Review:    A bankruptcy court's denial of a motion to reconsider a claim objection is reviewed for abuse of discretion.  *See Pellulo v. Edwards & Angell*, 1999 U.S. Dist. LEXIS 16711 at **6-7 (E.D. Pa. Oct. 29, 1999); *Marta Group, Inc. v. County Appliance Co., Inc..*, 79 B.R. 200, 205 (E.D. Pa. 1987) (citing advisory committee comment to predecessor Rule 307 now Fed. R. Bankr. P. 3008).

Issue No. 3:    Whether the Debtor waived arguments concerning merger of the Mortgage with foreclosure judgment, Office of the Comptroller of the Currency consent order, and failure of the Bankruptcy Court to hold an evidentiary hearing on Freddie Mac's "ownership" of the Debtor's loan, by failing to raise those issues before the Bankruptcy Court.

Standard of Review:    Issues not raised by the appellant in the bankruptcy court below or fully argued in an appellant's opening brief are deemed waived and subject to dismissal.  *See Forever Green Ath. Fields, Inc. v. Dawson*, 514 B.R. 768, 782 (E.D. Pa. 2014).

## III. STATEMENT OF THE CASE

PNC is dissatisfied with the Statement of the Case contained in Appellant's Opening Brief and submits that the following is a correct statement of the case.

### A. History of the Loan and the State Court Foreclosure Action

The Debtor owns improved residential real property commonly known as 699 West Glen Rose Road, Coatesville, PA 19320 (the "Property"). (C.R. 9 & 135.)[2] The Debtor resides in the Property. (C.R. 140-141.) On November 24, 2005, the Debtor executed and delivered a Note (the "Note") payable to the order of National City Mortgage Co. ("National City") and a Mortgage (the "Mortgage") granting National City a lien against the Property as security for performance of the Debtor's obligations under the Note, including the obligation to make payments as and when due. (C.R. 32 & 51.) PNC is a successor by merger to National City. (C.R. 3 & 55.) The indebtedness evidenced by the Note and Mortgage is referred to herein as the "Mortgage Loan."

On May 11, 2010, as a result of the Debtor's payment defaults in connection with the Mortgage Loan, PNC commenced a foreclosure action in the Chester County Court of Common Pleas (the "State Court"), Case No. 2010-05953 (the "Foreclosure Action"). PNC averred in the Complaint filed commencing the Foreclosure Action that "it is the legal **holder** of the Mortgage that is the subject of this action." (C.R. 187 (emphasis added).) Pursuant to Pa. R.C.P. 1141 and Pa. R.C.P. 1019(g), the Note and Mortgage were incorporated into the foreclosure complaint by reference to the recorded mortgage and did not need to be separately attached.

After the Debtor failed to respond to PNC's complaint, the State Court entered a default judgment against the Debtor in the Foreclosure Action. Thereafter, the Debtor filed a "Petition

---

[2] Citations to "C.R." are to PNC's Counter-Record submitted in connection herewith and "R." are to the record submitted in connection with Appellant's Opening Brief.

to Open Judgment and Answer and New Matter Counterclaim" (the "Petition to Open Judgment"). (C.R. 6-14.) In the Petition to Open Judgment, the Debtor asserted, among other things, that PNC failed to produce any evidence that it was the holder of the Note and Mortgage. (C.R. 6-14.) Debtor's Petition to Open Judgment was denied by the State Court by Order signed on October 28, 2010. (C.R. 5 & 179.) The Debtor appealed the State Court's decision denying the Petition to Open Judgment. That appeal was dismissed on January 10, 2011, because of the Debtor's failure to prosecute the appeal. (C.R. 165 & 180.)

**B.      The Bankruptcy Case, the Proof of Claim, and the Adversary Proceeding**

The Debtor is a debtor under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"), pursuant to a voluntary petition for relief filed by the Debtor on October 21, 2011 (the "Petition Date"), commencing *In re Linda Merritt*, Case No. 11-18134 (JKF) (the "Bankruptcy Case"), in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). The Honorable Jean K. FitzSimon is presiding over the Bankruptcy Case and all related adversary proceedings.

On November 14, 2011, PNC filed a proof of claim (Claim No. 4-1) (the "Proof of Claim") asserting a claim in the amount of $358,866.71 secured by the Property pursuant to the Mortgage. (C.R. 111.) The Proof of Claim asserted that the Debtor's arrears under the Mortgage Loan totaled $86,790.27 as of the Petition Date. (C.R. 111.) PNC attached a copy of a Note and Mortgage to its Proof of Claim and, in accordance with Rule 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") redacted certain personally identifiable information, including the Freddie Mac loan identifier. On their face, the Note is payable to National City and the Mortgage identifies National City as the lender. (C.R. 118 – 138.) The Note and Mortgage also state, on their face, that the form used for each was the "Fannie Mae/Freddie Mac Uniform Instrument." (C.R. 118 & 135.)

On November 29, 2012, the Debtor filed a complaint (the "Original Complaint") against PNC in the Bankruptcy Court, commencing Adversary Proceeding No. 12-00687-jkf (the "Adversary Proceeding"). The Original Complaint purported to assert claims for fraud, abuse of process, and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), against PNC. The gravamen of the Original Complaint was that PNC lacked standing to prosecute the Foreclosure Action because it was not the owner of the Note and Mortgage and had misrepresented its status as owner of the Note and Mortgage to the State Court. The Debtor also alleged that PNC had failed to inform the Debtor that the servicer of the Mortgage Loan had changed from National City to PNC as a result of the merger of National City and PNC, and that such failure violated RESPA. (C.R. at 140-159.)

PNC moved to dismiss the Original Complaint on the basis that it had only represented it was the holder of the Note and Mortgage in the Foreclosure Action (and, as such, was entitled to enforce the same) and had not represented that it was the owner of the Mortgage Loan. (C.R. at 171-172.) The Bankruptcy Court agreed with PNC and, on March 25, 2013, the Bankruptcy Court dismissed all of the claims asserted by the Debtor in the Original Complaint. The Bankruptcy Court dismissed the Debtor's claims for fraud and violation of RESPA with prejudice but granted the Debtor leave to amend her abuse of process claim. (C.R. 181.)

On July 2, 2013, the Debtor filed an amended complaint in the Adversary Proceeding, reasserting her abuse of process claim (the "Amended Complaint"). The abuse of process claim in the Amended Complaint was premised upon the allegation that PNC's representations in the Foreclosure Action and the Bankruptcy Case that it was the holder of the Note and Mortgage were fraudulent because Freddie Mac was, in fact, the investor or owner of the Mortgage Loan. (C.R. 182-193.) Following additional motion practice, on December 12, 2014, the Bankruptcy

Court dismissed the Debtor's amended complaint with prejudice, finding that the Debtor had not pled a viable claim for abuse of process because the Debtor's claim relied on the same alleged misrepresentations as to PNC's status in the Foreclosure Action, which the Bankruptcy Court had previously dismissed with prejudice. (C.R. 198 at n.5.) The Debtor twice requested reconsideration of the Bankruptcy Court's dismissal of the Adversary Proceeding. The Bankruptcy Court denied both requests for reconsideration by orders entered on December 22, 2014, and January 5, 2015. (C.R. 207 & 239.) The Debtor did not appeal from the Bankruptcy Court's dismissal of the claims asserted in the Adversary Proceeding or the denial of her motions for reconsideration.

### C. The Claim Objection

Notwithstanding the Bankruptcy Court's ruling in the Adversary Proceeding, on February 17, 2015, the Debtor filed an objection to PNC's Proof of Claim (the "Claim Objection").[3] (App. Br. at 8.)

In the Claim Objection, the Debtor again asserted, as she had done in the Adversary Proceeding, that (1) PNC lacked standing as a creditor to file the Proof of Claim because it was not the "owner" of the Debtor's Note and Mortgage but rather was only a servicer and (2) PNC's redaction of the Freddie Mac loan identifier on the exhibits to the Proof of Claim, as required by Bankruptcy Rule 9037, was somehow an attempt to hide the involvement of Freddie Mac as an investor in the Mortgage Loan and was a "fraud" on the Bankruptcy Court. (C.R. at 252-257). However, the Debtor affirmatively stated in the Claim Objection that "PNC admittedly is the mortgage servicer." (C.R. at 256).

---

[3]     On January 7, 2015, the Debtor filed a motion to cram-down PNC's secured claim to the value of the Property, which the Bankruptcy Court denied. The denial of the reconsideration of the cram-down motion is the subject of a separate appeal pending before this Court. (App. Br. at 9 n.1; Case No. 15-cv-04937.)

PNC responded to the Claim Objection by arguing, among other things, that the Claim Objection was an improper attempt by the Debtor to relitigate the matters already determined in both the Foreclosure Action and the Adversary Proceeding and, as a result, the Claim Objection was barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata.* (C.R. 1-4;) (C.R. 160-181.)

On June 16, 2015, the Bankruptcy Court conducted a hearing on the Claim Objection. (C.R. 74-110.) During the June 16 hearing, Debtor's counsel stated that the sole basis for the Claim Objection was that PNC was not the "owner" of the Note and Mortgage even though the Debtor conceded that PNC was the servicer and that PNC had perpetrated a fraud on the court by redacting the Freddie Mac loan identifier from the exhibits to the Proof of Claim. (C.R. 82-83.) At the conclusion of argument, the Court asked whether counsel to the Debtor had "any other argument with regard to the proof of claim form?" (C.R. 82.) Debtor's counsel responded, "No, Your Honor," and, after a brief colloquy with PNC's counsel, the Court issued an oral opinion overruling the Claim Objection and entered an order consistent with its oral opinion later on the same day. (C.R. 82-83.) Thereafter, the Debtor filed a motion to reconsider the Bankruptcy Court's order overruling the Claim Objection, which motion the Bankruptcy Court denied on July 22, 2015. (C.R. 262-272).

On August 4, 2015, the Debtor filed a notice of appeal, thereby commencing this appeal. (C.R. at 274.)[4]

## IV.    SUMMARY OF ARGUMENT

There is no basis to overturn the Bankruptcy Court's conclusion that PNC, as servicer of the Mortgage Loan, had standing to file the Proof of Claim in the Bankruptcy Case. The

---

[4]    While the notice of appeal references the denial of the Claim Objection in the title to the Reconsideration Order, the notice of appeal does not separately identify the order denying the Claim Objection as an order from which the Debtor has appealed.

Bankruptcy Court properly concluded that the Debtor's admission that PNC is the servicer of the Mortgage Loan was fatal to the Debtor's third attempt to litigate the issue of PNC's standing to enforce the Note and Mortgage. Moreover, the Bankruptcy Court properly concluded that the Debtor's assertion that PNC perpetrated a fraud on the Bankruptcy Court by redacting, in accordance with Bankruptcy Rule 9037, the Freddie Mac loan identifier on the exhibits submitted with its Proof of Claim was without merit because, among other things, the Bankruptcy Court was not, in fact, deceived. As such, Debtor's arguments in support of its appeal from the Bankruptcy Court's denial of the Claim Objection should be rejected.

In addition, it was not an abuse of discretion for the Bankruptcy Court to deny reconsideration of its order denying the Claim Objection and the Bankruptcy Court's well-reasoned opinion demonstrates that the Debtor asserted no valid grounds for reconsideration pursuant to Bankruptcy Rule 9023. Reconsideration of an order denying a claim objection is a matter committed fully to the Bankruptcy Court's discretion pursuant to either Bankruptcy Rule 9023 or 3008, and the Debtor cannot demonstrate on appeal that such discretion was abused.

Because there is no basis to overturn the Bankruptcy Court's orders, this Court should affirm.

## V. ARGUMENT

### A. The Bankruptcy Court Did Not Err In Overruling the Debtor's Claim Objection

#### 1. Loan Servicers Have Standing to Prosecute Proofs of Claim

Those courts that have addressed the issue have nearly unanimously held that loan servicers have standing to file proofs of claim in bankruptcy cases. *In re Alcide*, 450 B.R. 526, 537 (Bankr. E.D. Pa. 2011) (collecting cases); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans which it services."); *Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*, 440 B.R. 624, 634 (Bankr. D.N.J. 2010);

*In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010); *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer."); *In re Viencek*, 273 B.R. 354, 358 (N.D.N.Y. 2002); *In re Daley*, 2015 WL 196509 at *4 (Bankr. S.D.N.Y. Jan 14, 2015) (creditor whom debtor admitted was servicer "clearly had standing" to file proof of claim); *In re Gulley*, 436 B.R. 878, 2010 WL 3342193, *9 (Bankr. N.D.Tex. 2010) ("many courts have held that a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of a note").

Relying upon this extensive and nearly unanimous line of cases, the Bankruptcy Court concluded that PNC had standing to file the Proof of Claim in the Bankruptcy Case because the Debtor admitted, indeed repeatedly conceded, that PNC was the servicer of the Mortgage Loan. The record could not be clearer on this point:

> THE COURT: But your client has admitted that [PNC's] an assignee, right?
> MR. PENN: No.
> THE COURT: Counsel?
> MR. PENN: To being a servicer of the mortgage, yes, Your Honor --
> THE COURT: Okay.
> MR. PENN: -- I would agree with that.

(C.R. 80.) The Debtor made similar concessions in the papers it filed with the Bankruptcy Court and, in fact, the Debtor appears to continue to concede that PNC is the servicer in the Appellant's Opening Brief. (C.R. 256 & App. Br. at 26 ("at most PNC would be servicer for the loan owned by Freddie Mac").)

As a result of this concession and the near unanimity of the relevant case law holding servicers have standing to file proofs of claim in bankruptcy cases, the Bankruptcy Court

concluded it did not need to reach the alternative arguments advanced by PNC that the Debtor's third attempt to litigate the issue was barred by the *Rooker-Feldman* doctrine and the doctrine of res judicata.[5]  (C.R. 264 n.1.)

The Bankruptcy Court was also correct in its application of *In re Alcide* in this case.  In *Alcide* Judge Frank addressed the issue of a loan servicer's standing to prosecute a motion for relief from stay to proceed with foreclosure and "to enforce rights under a mortgage" where the evidence presented in support of the loan servicer's standing as a holder in due course of the mortgage note had been placed in dispute by contradictory evidence.  450 B.R. at 536-537.  While finding that in the context of a motion relief from stay, a servicer may be required to provide evidence of its right to commence a foreclosure, the *Alcide* court expressly distinguished the requirements of standing to file a proof of claim.  In making this distinction, Judge Frank noted that "a number of courts have upheld the authority of a mortgage loan servicer to file a proof of claim on behalf of the mortgage holder" and held that "[i]n the proof of claim context, the authority of a servicer to file a proof of claim is expressly authorized by the rules of court." *Id*. at 537 n.22 (collecting cases and citing Fed. R. Bankr. P. 3001(b) permitting the filing of proofs of claim by a creditor's authorized agent).

*Alcide* is further distinguishable from the present case because, in contrast to the servicer in *Alcide*, PNC has already litigated the Foreclosure Action in the State Court and been found to have standing to enforce the Note and Mortgage.  Moreover, in connection with a motion for relief from stay, the moving creditor has the burden of proving standing.  *Alcide*, 450 B.R. at 540 (noting that the burden on the relief from stay movant to establish itself as a holder of the mortgage or authorized to act in foreclosure "is not difficult to meet, requiring only presentation

---

[5]        The question of whether PNC was the holder of the Note and Mortgage with standing to foreclose was already litigated in the Foreclosure Action and the Adversary Proceeding.

of the rudimentary elements of its claim." (internal citations, quotations and alterations omitted)). However, in the context of a proof of claim, the burden of proof is on the Debtor to offer something to rebut the claim's *prima facie* validity, including PNC's standing.  Fed. R. Bankr. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim").  The Bankruptcy Court held that the Debtor's legal arguments and identification of Freddie Mac as "owner" of her Note were insufficient to overcome the *prima facie* validity of the Proof of Claim.  (C. R. 262-272). Further, the Debtor did not request that the Bankruptcy Court take evidence with respect to the Proof of Claim.  (*Id*.)

In cases, including *Alcide*, where the servicer's status as servicer is uncontested, as it was in the Bankruptcy Case because the Debtor conceded that PNC was the servicer, the right to collect payments due under a note as servicer is the very fact that confers standing to file and defend a proof of claim.  *See Alcide*, 450 B.R. at 450.  Indeed, each of the cases that the Debtor cites in support of her argument is distinguishable from the case at bar because those cases involved disputes as to either the servicer's standing as noteholder or the ultimate note owner/investor's identity. Neither is in dispute here.  As a result, the Bankruptcy Court's interpretation of *Alcide* was correct and comports with the conclusion reached by virtually all courts that have considered the issue.

As such, it was not clear error for the Bankruptcy Court to determine based on the Debtor's admissions that PNC was the servicer of the Mortgage Loan, and, thus, had standing to file the Proof of Claim.

2.    The Debtor has Already Litigated the Issue of PNC's Standing in the State Court Foreclosure Proceeding.

In addition, as PNC argued below, the Debtor was barred by the *Rooker-Feldman* doctrine and the doctrine of res judicata from attempting to litigate, for a third time, the issue of PNC's status as holder of the Note and Mortgage with concomitant standing to both file the Proof of Claim in the Bankruptcy Case and to pursue the Foreclosure Action in State Court.[6]

a.    The Debtor's Objection to PNC's Standing to Prosecute its Claim is Barred by Res Judicata

Under Pennsylvania Law, the principle of *res judicata* bars litigation of claims that were or could have been litigated in a prior proceeding. *Balent v. City of Wilkes-Barre*, 699 A.2d 309, 313 (Pa. 1995); *Wilkes v. Phoenix Home Life Mut. Ins. Co*., 902 A.2d 366 (Pa. 2006); *Stuart v. Decision One Mortgage Co., LLC*, 2009 Pa. Super. 103, 975 A.2d 1151 (2009).  Judgment by Default is *res judicata*…." *Fox v. Gabler*, 534 Pa. 185, 189 (1993).  "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.  *Stuart*, 975 A.2d at 1153 (*quoting Twp. Of Ohio v. Builders Enters., Inc.* 276 A.2d 556, 557 (Pa. Commw. Ct. 1971)).

Under basic principles of *res judicata* the Debtor has already, on multiple occasions, actually litigated the issue of PNC's standing.  On August 9, 2010, default judgment was entered in favor PNC and against the Debtor by the State Court in the Foreclosure Action.  On August 19, 2010, Debtor filed the Petition to Open Judgment.  (C.R. 6-13.)   The Petition to Open Judgment contained defenses to the Foreclosure Action, including but not limited to the claim that PNC was not the legal holder of the note and mortgage. (C.R. 6-13.)   The Petition to Open

---

[6]    As noted above, the Bankruptcy Court explicitly noted in its decision on reconsideration that it did not need to reach these arguments since PNC's standing as servicer and lack of fraud on the Court precluded the need to consider whether PNC's standing to prosecute the foreclosure action was barred under *res judicata* or Rooker-Feldman principles.  (C.R.263-264 at n.1.)

Judgment was denied by the State Court and the Debtor's appeal therefrom was dismissed. (C.R. 5.)

Throughout Appellant's Opening Brief, the Debtor refers to Freddie Mac as the "holder/owner" of her Note. The term "holder" is a term of art under Article 3 of the Uniform Commercial Code and is not coterminous with the term "owner." Pennsylvania law is clear on this issue.

Pennsylvania law is clear that a mortgagee is a real party in interest in a foreclosure action, and the holder of a note and mortgage can enforce the note. Specifically, Section 3301 of the Pennsylvania Uniform Commercial Code (the "Pa UCC") provides that a holder of a negotiable instrument is a "person entitled to enforce" it. *See* 13 Pa.C.S.A. Section 3301 (1). Section 3302 of the Pa UCC defines a "holder in due course" of a negotiable instrument as the holder of an instrument if "the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;" and the holder took the instrument for value and in good faith. See Section 3302(a). Finally, Section 1201 defines a "holder," in relevant part, as "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." *See* 13 Pa.C.S.A. Section 1201(b)(21)(i). However, the "holder" in "possession" is not necessarily the same person as the ultimate owner, a fact courts have often addressed.

As the Pennsylvania Superior Court has explained, ownership of a mortgage note is "not relevant" to the determination of whether a person or entity is the note "holder" with the right to enforce the note under the Pennsylvania UCC. *See In PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell*, 100 A.3d 611, 621 (Pa. Super. 2014) (citing the Comment to Section 3203 of the

Pennsylvania Uniform Commercial Code distinguishing between the status of owner and holder of a negotiable instrument). As PHH had "established as a matter of law that it is a holder in due course of the [borrower's] note and thus is 'entitled to enforce' it pursuant to section 3301 of the Pennsylvania Uniform Commercial Code[,] [e]vidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to this determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon." *Id.*; *also J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258 (Pa. Super. 2013) (stating that in Pennsylvania mortgage notes are negotiable instruments governed by the Pa UCC). (*See also* C.R. 80 (Bankruptcy Court noting that it was not incumbent upon PNC to prove it was the "owner of the mortgage," but rather that it had "standing").)

The filing of the Adversary Proceeding also attempted to relitigate these same issues of lack of standing under the guise of fraud and abuse of process claims. (C.R. 140 *et seq.*). The crux of the claims in the Adversary Proceeding was PNC's lack of standing as the real party in interest to enforce the obligations under the Note and Mortgage. (*Id.*) These claims were dismissed with prejudice. (C.R. 201-202; C.R. 207-210; C.R. 239-241.)

Because of the judgments entered by the State Court in the Foreclosure Action and the Bankruptcy Court in the Adversary Proceeding, the Debtor was precluded from attempting to relitigate these determinations in connection with the Proof of Claim. *See, e.g., In re Brooks*, 2008 Bankr. LEXIS 621, *15 (Bankr. E.D. Pa. Feb. 13, 2008) (debtor's attempts to dispute via claim objection "the merits of the underlying facts and arguments that gave rise to [a state court foreclosure] determination" were "precisely what res judicata precludes"). The State Court Proceeding indisputably found that PNC had standing under the Pa UCC to obtain a foreclosure judgment which was upheld following the Debtor's own Petition to Open Judgment. Therefore,

in addition to its undisputed standing as servicer of the Mortgage Loan, PNC established in the State Court proceeding that it has standing under the Pa UCC to enforce the Note and Mortgage against the Debtor. As such, the Debtor cannot argue, under any theory, that PNC lacked standing to file and defend the Proof of Claim, and the Bankruptcy Court's denial of the Debtor's objection to PNC's standing must be upheld.

        b.       The *Rooker-Feldman* Doctrine Similarly Bars Relitigation of PNC's Standing Via the Debtor's Claim Objection

Furthermore, the Bankruptcy Court and this Court are barred by the *Rooker-Feldman* doctrine from re-adjudicating PNC's standing to foreclose and file the Proof of Claim. Under the *Rooker-Feldman* doctrine,[7] a federal district court may not exercise subject matter jurisdiction if doing so could result in "overturn[ing] an injurious state-court judgment." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The doctrine thus bars "cases brought by state court losers complaining of injuries caused by a state court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

A claim is barred by the *Rooker-Feldman* doctrine in either of two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action;" or (2) "if the federal claim is inextricably intertwined with the state court adjudication, meaning that the federal court relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A "federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal

---

[7]     *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

Case law is replete with decisions applying the *Rooker-Feldman* doctrine where, as here, the borrower's claims implicitly or explicitly seek federal district court review of adverse state court foreclosure judgments. *See In re Madera*, 586 F.3d at 232 (affirming bankruptcy court's ruling that *Rooker-Feldman* barred borrower's claim for rescission under Truth-in-Lending Act ("TILA"), because such claim would negate prior state court foreclosure); *Manu v. Nat'l City Bank of Indiana*, 471 Fed. Appx. 101, 105 (3d Cir. 2012) (borrower's claims that her statutory and other rights were violated by lender's foreclosure, when lender allegedly had no right to foreclose, "is nothing more than an attack on the state court judgment"); *Abboud v. Abboud (In re Abboud)*, 237 B.R. 777, 782 (B.A.P. 10th Cir. 1999) (debtor's attempt to attack state court foreclosure judgment by claim objection on theory of defense of statute of limitations not permissible under *Rooker-Feldman* doctrine where judgment itself was only "voidable" and not legally void on limited grounds of fraud on court or lack of jurisdiction).

Here, PNC's standing to foreclose was considered and decided by the State Court in the Foreclosure Action when it denied the Debtor's Petition to Open Judgment. (*See* C.R. 5.) The Debtor's Claim Objection and this appeal is nothing more than an impermissible invitation to review and reject the State Court's determination that PNC is the holder of the Mortgage and the Note and has standing to foreclose (and, therefore, assert a claim in the Bankruptcy Case based on the Note, Mortgage, and judgment entered in the Foreclosure Action). Under the *Rooker-Feldman* doctrine, neither the Bankruptcy Court nor this Court can grant the requested relief requested by the Debtor absent a finding that the State Court acted erroneously.

3.      The Bankruptcy Court Correctly Concluded that PNC Had Not
        Perpetrated a Fraud on the Court by Redacting the Loan Identifier

The Bankruptcy Court also correctly held that PNC did not commit a fraud on the Court by redacting the Freddie Mac loan identifier from the exhibits to its Proof of Claim.[8]  The standard for showing fraud on the court sufficient to either vacate the order denying the Claim Objection or deny the *prima facie* validity of the Proof of Claim is a "necessarily demanding standard" requiring a showing of "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."  (C.R. at 268 (citing *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005)).)  Such a determination may be justified only by the most egregious misconduct directed to the court itself and must be supported by clear, unequivocal, and convincing evidence.  *See id.*

First, there was no evidence whatsoever that PNC or its counsel made any intentional misrepresentation whatsoever to the Bankruptcy Court.  In fact, quite to the contrary of attempting to perpetrate a fraud, PNC disclosed Freddie Mac's role in its response to the Claim Objection and referred to PNC, itself, as the holder of the Note and Mortgage, as well as the servicer of the Loan, throughout the Bankruptcy Case and the Foreclosure Action. (C.R. 1-4; C.R. 161-176.)  PNC also provided the Bankruptcy Court with copies of the Note and Mortgage, without the Freddie Mac loan identifier redacted.  Moreover, the Freddie Mac loan identifier was redacted because Bankruptcy Rule 9037 required that it be redacted.  Fed. R. Bankr. P. 9037.  Ironically, in contrast to Debtor's counsel's own insistence on reprinting these numbers in full in her opening brief, Bankruptcy Rule 9037 is intended to protect individuals from the harm that can sometimes arise from disclosure of such numbers in public filings.  *See In re McKinney*, 507

---

[8]      The Debtor continues to print such numbers in full in her opening brief in violation of the rules governing submission of personally identifiable information and common sense.  *See e.g.* Fed. R. Bankr. P. 9037; Fed. R. Civ. P. 5.2.

B.R. 534, 558 (Bankr. W.D. Pa. 2014) (ordering that all exhibits be filed with personal identifiers redacted in accordance with Fed. R. Bankr. P. 9037).

With respect to the last prong of the test, the Bankruptcy Court concluded that it had not, in fact, been deceived by the redaction of the Freddie Mac loan identifier from the exhibits on the Proof of Claim. *See* (C.R. at 81-82 (THE COURT: ". . . Your argument that there was a fraud perpetrated on the Court doesn't stand because I wasn't -- if for no other reason, I wasn't deceived, which is a requirement for that").) Only the Bankruptcy Court could know whether it, in fact, had been deceived and the Debtor offers no explanation as to how the Bankruptcy Court committed error with respect to this determination.

Simply put, there was no misrepresentation, let alone an intentional one, and the Bankruptcy Court was not deceived. (C.R. at 83 (Bankruptcy Court taking into consideration PNC's counsel's statement that motivation for redaction of loan identifier was not an intent to deceive as to the investor's identity but rather to comply with Bankruptcy Rule 9037).) There is no valid basis for disturbing these findings on appeal, let alone a basis for finding that the Bankruptcy Court abused its discretion and committed clear error in making these findings.

4.      Debtor's Other Arguments Were Not Raised Below

While not entirely clear for what purpose they are raised, the Debtor asserts arguments concerning the foreclosure judgment entered by the State Court and a consent order entered by the Office of the Comptroller Consent Order. (App. Br. at 28-29.) These arguments were not raised in the Claim Objection or, even, the Motion for Reconsideration before the Bankruptcy Court and are therefore waived in this appeal. (*See* C.R. 82-83 (Debtor's counsel admitting he has no other argument aside from standing or fraud on court to object to proof of claim);) *e.g., Forever Green Ath. Fields, Inc. v. Dawson*, 514 B.R. at 782-783 (citing *Belcufine v. Aloe*, 112

F.3d 633, 638 (3d Cir. 1997) and dismissing issues that were waived by failing to address with

bankruptcy court or by failing to brief).[9]

B.    **The Bankruptcy Court's Denial of Reconsideration Was Not an Abuse of Discretion**

The Bankruptcy Court did not abuse its discretion in its denial of reconsideration of the

Claim Objection.    A bankruptcy court's denial of reconsideration of a claim objection is

reviewed for abuse of discretion whether considered under Bankruptcy Rule 3008 or 9023.  *See*

*Pellulo*, 1999 U.S. Dist. LEXIS 16711 at \*\*6-7; *Marta Group, Inc.*, 79 B.R. at 205.   Judicial

discretion is abused only when the court acts in an arbitrary, fanciful or unreasonable manner or

where it uses improper legal standards, criteria or procedures.  *Barnes Foundation v. Township*

*of Lower Merion,* 242 F.3d 151, 167 (3d Cir. 2001).

The Bankruptcy Court's opinion denying reconsideration of the Claim Objection

explained that the Debtor had not presented any of the grounds required under Bankruptcy Rule

9023 to reconsider the original denial of the Claim Objection.  (C.R. 269-272.)  The Bankruptcy

Court's discretion to deny such reconsideration of claim objections under Bankruptcy Rule 3008

is absolute and the Debtor has not argued any particularized reason that such discretion was

abused in her opening brief.  *See Marta Group, Inc.*, 79 B.R. at 205.  Because the Debtor has

litigated the issue of PNC's alleged lack of standing and "fraud" repeatedly and unsuccessfully,

it was appropriate for the Bankruptcy Court to find that the Debtor had not demonstrated a

change in the law, new evidence or need to correct a clear error of law or fact on which to

reconsider the Claim Objection order under Bankruptcy Rule 9023.  (C.R. at 269-272.)  As the

---

[9]       Similarly, Debtor's fifth identified issue concerning whether it was error for the
Bankruptcy Court to fail to conduct an evidentiary hearing concerning Freddie Mac's role in the
Debtor's loan was not raised in the court below and ignores the fact that a hearing was held on
the Debtor's Claim Objection upon reconsideration of which the Bankruptcy Court found the
Debtor had not presented sufficient evidence to defeat the *prima facie* validity of PNC's claim or
establish fraud on the court.  (C.R. 262-272.)

Bankruptcy Court carefully detailed the bases on which it could find that PNC had standing to prosecute the claim and each of the reasons why it was not deceived as to Freddie Mac's "role" in the securitization of the Mortgage Loan even though the public filing of the Proof of Claim redacted the loan identifier it was not an abuse of discretion for the Bankruptcy Court to deny reconsideration of the Claim Objection.

## VI.    CONCLUSION

For the reasons stated herein, this Court should affirm the orders entered by the Bankruptcy Court overruling the Claim Objection and denying the Debtor's motion for reconsideration of the same.

Dated: October 29, 2015                    Respectfully submitted,

/s/ Nicole B. LaBletta_____
NICOLE B. LABLETTA, ESQ.
UDREN LAW OFFICES, P.C.
111 Woodcrest Rd, Ste 200
Cherry Hill, NJ 08003
856-669-5400
856-669-5399
nlabletta@udren.com


*Attorneys for Appellee, PNC Bank, National Association*