IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE LINDA MERRITT<br><br>*Debtor* | CHAPTER 13<br>CASE NO. 11-18134 |
| LINDA MERRITT<br><br>*Appellant*<br><br>v.<br><br>PNC Bank, National Association,<br><br>*Appellee* | CIVIL ACTIONS<br>NO. 15-04282<br>NO. 15-04937 |
| LINDA MERRITT<br><br>*Appellant*<br><br>v.<br><br>PNC Bank, National Association,<br><br>*Appellee* | |

**PAPPERT, J.**                                                                                                  **MARCH 15, 2016**

**MEMORANDUM**

    Before the Court are two appeals from the United States Bankruptcy Court for the Eastern District of Pennsylvania, both involving Appellant Linda Merritt ("Merritt") and Appellee PNC Bank, National Association ("PNC"). After Merritt defaulted on her mortgage held by PNC and filed for Chapter 13 bankruptcy protection, PNC filed a proof of claim in the bankruptcy proceeding. Merritt asserted that PNC did not have standing to file a proof of claim because it was not the owner of the mortgage loan. She also sought to modify the terms of the loan in bankruptcy such that the value of PNC's claim was reduced to the value of her house.

1

The Bankruptcy Court found in favor of PNC on both of those claims: it held that PNC had standing to file a proof of claim (the "Claim Objection Order") and that Merritt could not "cram-down" her outstanding mortgage to the value of her home (the "Cram-Down Order"). Merritt sought reconsideration of those two decisions, which the Bankruptcy Court denied. She now appeals the decisions denying her two motions for reconsideration. She contends that the Bankruptcy Court abused its discretion by: (1) incorrectly granting PNC standing to file its proof of claim; and (2) not allowing her to "cram-down" the mortgage on her home. PNC contends that the Bankruptcy Court came to the correct conclusion on both the proof of claim and "cram-down" issue. For the reasons discussed below, the Court affirms the order denying reconsideration of the Bankruptcy Court's Claim Objection Order and Cram-Down Order.

**I.**

Merritt owns improved residential real property located at 699 West Glen Rose Road, Coatesville, PA 19320 (the "Property"), which she uses as her primary residence. (R-368.)[1] In approximately October 2004, Merritt contacted National City Mortgage Company ("National City") and initiated the process for refinancing a then-existing mortgage loan secured by the Property. (*See* Appellee's Brief at 3, No. 15-cv-04937, ECF No. 8.) On November 5, 2004, she executed and submitted to National City a Uniform Residential Loan Application (the "Loan Application"), on which she stated that the Property was her "Primary Residence." (R-397 § II.) She also stated that her mailing address was the Property's address and that she was not receiving any rental income from the Property. (R-398 §§ III, V.)

On November 24, 2004, National City approved the Loan Application. (R-413–15.) Merritt delivered a note (the "Note") payable to National City and a mortgage (the "Mortgage,"

---

[1] The pages in the Appendix to the Record in Case No. 15-cv-04937 are labeled with a prefix of "R-." For ease of reference, the Court maintains this numbering scheme when citing to the Record.

2

collectively with the Note, the "Mortgage Loan") granting it a lien against the Property. (R-413–33.) The Mortgage stated that Merritt agreed to "occupy, establish, and use the Property as [her] principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as [her] principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing . . . or unless extenuating circumstances exist which are beyond [Merritt's] control." (R-424 at § 6.) Section 8 of the Mortgage stated that an event of default occurs if Merritt provided "materially false, misleading, or inaccurate information or statements to PNC . . . in connection with the Loan," which was defined to include "representations concerning [Merritt's] occupancy of the Property as [her] principal residence." (R-418.) The Mortgage did not contain a "Second Home," "1-4 Family" or "Other" rider. (R-418.)

PNC became the successor-in-interest to the Mortgage after it acquired National City in 2008 and is the current servicer of the Mortgage. (R-360, 479.)

### A. State Foreclosure Litigation and Bankruptcy Litigation

On May 11, 2010, after Merritt defaulted on a series of payments on the Mortgage Loan, PNC commenced a foreclosure proceeding (the "Foreclosure Action") against Merritt in the Chester County Court of Common Pleas. (R-27.) PNC stated in its complaint that it is "the legal holder of the Mortgage that is the subject of this action." (C.R. 187.)[2] The state court entered a default judgment in PNC's favor after Merritt failed to respond to the complaint. (R-28.)

Merritt then filed a "Petition to Open Judgment and Answer and New Matter Counterclaim" (the "Petition to Open Judgment") asserting, among other things, that PNC failed to produce any evidence that it was the holder of the Note and Mortgage. (C.R. 6–14.) On

---

[2] Citations to "C.R." are to PNC's Counter-Record submitted in connection with its response brief in Case No. 15-cv-04282.

October 28, 2010, the state court denied the Petition to Open Judgment. (C.R. 5.) Merritt appealed that decision, which the Superior Court of Pennsylvania dismissed on January 10, 2011, due to her failure to prosecute the appeal. (C.R. 165, 180.)

On October 10, 2011, Merritt filed a voluntary petition for Chapter 13 bankruptcy (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). *See In re Linda Merritt*, No. 11-18134 (Bankr. E.D. Pa. filed Oct. 11, 2011). On November 14, 2011, PNC filed a proof of claim (the "Proof of Claim") in the Bankruptcy Case asserting a claim for $358,866.71 secured by the Property. (R-1285–1313.) The Proof of Claim stated that the Mortgage Loan was $86,790.27 in arrears as of the date of Merritt's bankruptcy filing and attached a copy of the Note and Mortgage. PNC redacted certain personal information on the Note and Mortgage, including the Freddie Mac loan identifier. (C.R. 118, 135.) The Note states that it is payable to National City and the Mortgage identifies National City as the lender. (C.R. 118–38.) PNC did not redact from the Note and Mortgage a label stating that the form used for each is the "Fannie Mae/Freddie Mac Uniform Instrument." (C.R. 118, 135.)

On September 25, 2012, PNC filed a motion for relief from the automatic stay as a result of Merritt's failure to make post-petition payments due under the Mortgage Loan (the "Lift Stay Motion"). (R-4–9.) In her response, Merritt claimed that PNC lacked standing as a "true creditor" due to PNC's disclosure that Freddie Mac was the investor in the Mortgage Loan. (R-10–25.) On November 29, 2012, Merritt filed a complaint against PNC in the Bankruptcy Case, asserting against PNC claims of fraud, abuse of process, and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). (C.R. 140–59.) She claimed that PNC lacked standing to prosecute the Foreclosure Action because it was not the owner of the

4

Note and Mortgage and that PNC had misrepresented its status as owner of those instruments to the state court. (R-150–58.) She premised her RESPA violation on PNC's alleged failure to inform Merritt that the servicer of the Mortgage Loan changed after PNC acquired National City. (C.R. 140–59.)

PNC moved to dismiss the complaint on the grounds that it had only represented it was the holder of the Note and Mortgage in the Foreclosure Action and not that it was the owner of the Mortgage Loan. (C.R. 171–72.) On March 25, 2013, the Bankruptcy Court dismissed all of Merritt's claims in the Adversary Proceeding: it dismissed her fraud and RESPA claims with prejudice but granted her leave to amend her abuse of process claim. (C.R. 181.) On July 2, 2013, Merritt filed an amended complaint reasserting her abuse of process claim. (C.R. 182–93.) She premised that claim on the allegation that PNC misrepresented itself as the "holder" of the Mortgage Loan in the Foreclosure Action and Bankruptcy Case even though Freddie Mac was, in fact, the investor/owner. (C.R. 182–93.) After briefing on the issue, the Bankruptcy Court dismissed Merritt's amended complaint with prejudice on December 12, 2014. (C.R. 194–200.) It held that Merritt had not pled a viable claim for abuse of process because the Bankruptcy Court had previously dismissed with prejudice Merritt's claims that PNC mispresented its status in the Foreclosure Action. (C.R. 198 n.5.)

Merritt twice requested reconsideration of the Bankruptcy Court's dismissal of Adversary Proceeding, which the Bankruptcy Court denied on December 22, 2013, and January 5, 2015. (C.R. 207, 239.) Merritt did not appeal from the Bankruptcy Court's dismissal of her claims or its denial of her motions for reconsideration.

### B. The Claim Objection and Cram Down Motion

On January 7, 2015, Merritt filed a cross-motion to PNC's Lift Stay Motion in which she sought a determination of the value of the Property and to "cram-down" PNC's secured claim to the value of the Property (the "Cram-Down Motion"). (R-357–62.) Merritt contended that the Mortgage Loan could be crammed-down to the fair market value of the property pursuant to 11 U.S.C. § 1322(b) because: (1) she rented a single room of the Property; (2) the Property was not her "domicile;" and (3) the Mortgage Loan was eligible for modification under Freddie Mac's post-foreclosure sale buy-back initiative. (R-359–60; R-479–81.)

She also filed an objection to PNC's Proof of Claim (the "Claim Objection) on February 17, 2015, despite the Bankruptcy Court's ruling in the Adversary Proceeding dismissing her assertions that PNC lacked standing. Merritt argued that PNC lacked standing to file the Proof of Claim because it was not the "owner" of the Note and Mortgage, though she recognized that "PNC admittedly is the mortgage servicer." (C.R. 256.) She also alleged that PNC's redaction of the Freddie Mac loan identifier was an attempt to hide Freddie Mac's involvement as an investor in the Mortgage Loan and was a "fraud" on the Bankruptcy Court. (C.R. 252–57.) PNC responded that Merritt's Claim Objection was an improper attempt to relitigate matters already decided in both the Foreclosure Action and Adversary Proceeding and therefore barred by the *Rooker-Feldman* doctrine and *res judicata*. (C.R. 1–4, 160–81.)

On June 16, 2015, the Bankruptcy Court held a hearing on both Merritt's Claim Objection and Cram-Down Motion. (C.R. 73–110.) At the hearing, Merritt stated that the sole basis for her Claim Objection was that PNC was not the "owner" of the Note and Mortgage. (C.R. 82–83.) The Bankruptcy Court denied the Claim Objection and issued the Claim Objection Order, finding that PNC's status as servicer of the Mortgage Loan was sufficient to

confer standing to file the Proof of Claim. (*Id.*) It also found that it was not "deceived" by PNC's redaction of Freddie Mac's loan identifier on the Proof of the Claim: "Your argument that there was a fraud perpetrated on the Court doesn't stand because I wasn't – if for no other reason, I wasn't deceived, which is a requirement for that." (R-1329–32.)

The Bankruptcy Court then heard argument and testimony on the Cram-Down Motion. It denied the Cram-Down Motion on the record because PNC's sole collateral was the Property and Merritt stated in her Loan Application and Mortgage that the Property was her principal residence. (R-13, 54–58.) The Bankruptcy Court denied the Cram Down Motion and issued the Cram-Down Order on June 23, 2015. (R-717–18.)

**C. Merritt's Motions for Reconsideration and Appeal**

Merritt filed a motion for reconsideration of the Claim Objection Order, which the Bankruptcy Court denied on July 22, 2015. (C.R. 262–72.) On August 4, 2015, Merritt filed a notice of appeal of the Bankruptcy Court's Order denying her motion for reconsideration (the "Claim Objection Appeal"), though she did not appeal the underlying Claim Objection Order.[3] (C.R. 274.)

On July 8, 2015, fifteen days after the entry of the Cram-Down Order, Merritt filed a motion for reconsideration of that Order. (R-826–36.) On August 18, 2015, the Bankruptcy Court denied the motion to reconsider, stating that it was untimely under the 14-day time limit of Bankruptcy Rule 9023 and that, even if considered on the merits, it did not establish any grounds for reconsideration. (R-1272–84.) On August 23, 2015, Merritt filed a notice of appeal of the Bankruptcy Court's Order denying her motion for reconsideration (the "Cram-Down Appeal"),

---

[3] The text of Merritt's Notice of Appeal unequivocally states that she is appealing the Bankruptcy Court's Order denying her motion for reconsideration of the Claim Objection Order, not the Claim Objection Order itself. Specifically, it states that she is appealing the "order . . . entered in this matter on July 22, 2015 denying Debtor's Motion for Reconsideration of the Order Overruling the Objection of the Debtor to PNC Bank, N.A.'s Proof of Claim [ ] of the Court's Order entered on June 16, 2015 [ ]." (No. 15-cv-04282, ECF No. 1.)

though she did not appeal the Cram-Down Order itself.[4]  Before the Court are Merritt's Claim Objection Appeal and Cram-Down Appeal.

## II.

The Court has jurisdiction over Merritt's appeals under 28 U.S.C. Sections 158(a)(1) and 1334.  The Bankruptcy Court's decisions to deny Merritt's motions to reconsider the Claim Objection and Cram-Down Motion are reviewed for abuse of discretion.  *See In re Olick*, 311 F. App'x 529, 531 (3d Cir. 2008) (citing *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005)).  Judicial discretion is abused only when the court acts in an arbitrary, fanciful or unreasonable manner or where it uses improper legal standards, criteria or procedures.  *See Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 167 (3d Cir. 2001); *see also McDowell*, 423 F.3d at 238 ("An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact.").[5]

## III.

The determinative issue regarding the Claim Objection is whether PNC has standing to file the Proof of Claim.  Courts often analyze that issue in the context of three actors in the

---

[4]   Similar to her appeal of the motion for reconsideration of the Claim Objection Order, Merritt's notice of appeal states that she appeals the Bankruptcy Court's denial of her motion for reconsideration of the Cram-Down Order, not the Cram-Down Order itself.  Her Notice of Appeal states that she appeals the "order . . . entered in this matter on August 18, 2015 [ ] denying Debtor's Motion for Reconsideration of the Order Overruling the Debtor's Cross Motion [ ] of the Court's Order entered on June 23, 2015 [ ]."  (No. 15-cv-04937, ECF No. 1.)

[5]   Had Merritt appealed the Claim Objection Order and the Cram-Down Order—and not the Bankruptcy Court's denial of her motions to reconsider those Orders—the Court would review the Bankruptcy Court's legal determinations de novo and its factual findings for clear error in those Orders.  *See In re Martin's Aquarium, Inc.*, 98 F. App'x 911, 913 (3d Cir. 2004).  Merritt's appeals of only the motions for reconsideration, however, require her to demonstrate that the Bankruptcy Court abused its discretion in denying those motions.  *See In re Olick*, 311 F. App'x at 531.  In any event, the standard of review is not determinative of the outcome: for the reasons discussed *infra*, the Court affirms the Bankruptcy Court's Claim Objection Order and Cram-Down Order even if considered on the merits.

mortgage lending process: the loan owner, holder and servicer.[6]  Merritt contests PNC's standing to file the Proof of Claim, arguing that she "has presented evidence that Freddie Mac and not PNC is the owner/holder of the subject mortgage."  (Appellant's Brief at 27, No. 15-cv-04282, ECF No. 7.)  Merritt's is wrong:  PNC is in fact the holder of the Note; further, whether or not PNC owns the Note is irrelevant to its standing to file a Proof of Claim.  *See In re Walker*, 466 B.R. 271 (Bankr. E.D. Pa. 2012) (recognizing a distinction between the owner of a Note and who is entitled to enforce it); *see also In PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell*, 100 A.3d 611, 621 (Pa. Super. 2014) ("Evidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to th[e] determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon.") (interpreting the Pennsylvania Uniform Commercial Code).  Merritt's focus on Freddie Mac's status as the "owner" is thus irrelevant to whether PNC has standing to file the Proof of Claim.  The relevant inquiry is instead whether PNC is the servicer and/or holder of the Note, which would give it standing to file the Proof of Claim.  *In re Alcide*, 450 B.R. at 537 n.22 ("In the proof of claim context, the authority of a servicer to file a proof of claim is expressly authorized by the rules of court.") (citing Fed. R. Bankr. P. 3001(b)).  Here, PNC is both the holder and servicer.

Merritt acknowledges that PNC is the servicer.  (C.R. 256; Appellant's Brief at 25–26, No. 15-cv-04937, ECF No. 7) ("PNC admittedly is the mortgage servicer.")  PNC is also the holder of the Note by virtue of its acquisition of the original holder, National City.  *See VFC Partners 25 LLC v. Scranton Ctr. Holdings LP*, 541 F. App'x 206, 207 (3d Cir. 2013) (holding

---

[6]  "A 'holder' is defined as the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." *Hoffman v. Wells Fargo Bank, N.A.*, No. 13-cv-5700, 2015 WL 3755207, at *3 (E.D. Pa. June 16, 2015). A "servicer" is defined by 12 U.S.C. § 2605(i)(2) as a person responsible "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."

that after a merger between Bank of America and LaSalle Bank, Bank of America had standing in a foreclosure action because "by way of a merger, Bank of America succeeded to LaSalle's rights as assignee pursuant to the National Bank Act.") (citing 12 U.S.C. § 215(e)). Thus, even though Freddie Mac is the owner of the Note—a fact which Merritt mistakenly believes is dispositive—PNC has standing to enforce the Proof of Claim as the holder and servicer. *See In re Alcide*, 450 B.R. 526, 537 (Bankr. E.D. Pa. 2011) (collecting cases) ("A number of courts have upheld the authority of a mortgage loan servicer to file a proof of claim on behalf of the mortgage holder.").[7]

Merritt also claims that the redaction of Freddie Mac's name was "designed to deceive the Court that the actual owner of the Note and Mortgage was Freddie Mac." (Appellant's Brief at 10, No. 15-cv-04282, ECF No. 7.) This assertion—which focuses on representations made about the *owner* of the Note and Mortgage—is not only irrelevant to whether PNC has standing but also without merit. To show that PNC committed a fraud on the Court, Merritt must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). Aside from whether PNC perpetrated an intentional fraud, which appears unlikely given that it was presumably attempting to comply with the redaction protocol articulated in Bankruptcy Rule 9037,[8] the Bankruptcy Court stated that it had not been deceived. (C.R. 81–82.) The Court cannot now find on appeal that the Bankruptcy Court erred in stating what only it could know—whether or not it was misled.

---

[7] Since PNC has standing to file a Proof of Claim as the holder and servicer of the Note, it is unnecessary to evaluate its assertion that Merritt's Claim Objection is barred by the *Rooker-Feldman* doctrine and *res judicata*. (*See* Appellee Brief at 12–16, No. 15-cv-04282, ECF No. 7.)

[8] Rule 9037 states that when filing a document, a party must redact certain personal identification items such as an individual's social security number, taxpayer identification number and financial-account number.

## IV.

The Bankruptcy Court did not abuse its discretion in denying Merritt's motion for reconsideration of the Cram-Down Order.  It correctly determined that the Mortgage Loan was not subject to cram-down, and there was therefore no basis on which to reconsider the Cram-Down Order.  Further, it correctly determined that Merritt's request for reconsideration was untimely and that she had not presented new evidence, change in law, or a manifest injustice.

The "normal rule" in bankruptcy is that, to the extent a claim exceeds the value of collateral on which it has a lien, the claim may be "crammed down" to the value of the collateral.  *See In re Scarborough*, 461 F.3d 406, 409–10 (3d Cir. 2006).  Section 1322(b)(2) of the Bankruptcy Code "carves out an exception to this general rule[]" for a Chapter 13 debtor by providing that it does *not* apply to a "claim secured only by a security interest in real property that is the debtor's principal residence."  *Id.*  Thus, a Chapter 13 debtor may not modify the rights of a creditor with a security interest in his primary residence.  *See id.*  In *Scarborough*, the Third Circuit Court of Appeals stated that the "critical moment" in determining whether property is a "principal residence" within the meaning of the exception is "when the creditor takes a security interest in the collateral."  461 F.3d at 412.  "It is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date."  *Id.* (internal citation and quotation marks omitted).

Merritt's argument in favor of her Cram-Down Motion is that the Property is not her primary residence because she currently rents a room in the Property and considers her "homestead" to be in Florida.  (R-360.)  Under *Scarborough*, however, the relevant inquiry is not whether she now rents part of the property or considers her homestead to be elsewhere, but what

representations she made to National City at the "critical moment" she executed the Mortgage Loan. 461 F.3d at 412. At that time, Merritt stated that she would use the Property as her "primary residence" and did not disclose any rental income in the Loan Application. (R-397.) She did not disclose any anticipated rental income or include a rider that the Property would be used as a rental property or second home. (R-397–99; 417–33.) The Mortgage she executed provides that Merritt is to "occupy, establish, and use the Property as [her] principal residence." (R-424.) National City did not purport to take any security interest in any rental income or other payments derived from the Property. It took a security interest only in the Property, her "principal residence." Accordingly, the Mortgage Loan is not subject to modification under Section 1322(b)(2), and pursuant to the Third Circuit's ruling in *Scarborough*, the Bankruptcy Court correctly denied Merritt's Cram Down Motion and her motion to reconsider the Cram Down Motion.[9]

The Bankruptcy Court's decisions are affirmed.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[9] Since the Bankruptcy Court accurately applied the *Scarborough* ruling to deny the Cram-Down Motion, the Court need not address the contentions regarding whether the Bankruptcy Court abused its discretion in finding the motion for reconsideration untimely pursuant to Bankruptcy Rule 9023.